HALLEY, C. J., and WELCH, O'NEAL and WILLIAMS, JJ., dissent.

## In re WILLIAMS' ESTATE.

### SPENCER v. JACKSON et al.

### No. 34985.

Supreme Court of Oklahoma.

March 2, 1954.

Rehearing Denied June 22, 1954.

John W. Mee, Lee Williams, Oklahoma City, for plaintiff in error.

Bruce & Rowan, Mosteller, McElroy & Fellers, Oklahoma City, for defendants in error.

CORN, Justice.

Jennie Williams was married to Stewart Williams in July, 1941. At the time of marriage she owned and was in possession of the property herein involved as her separate property. Stewart Williams owned no property at the time of their marriage. On June 30, 1945, Jennie Williams executed a will, the material portions of which appear hereafter, and died on December 3, 1945.

"First—I direct the payment of all my just debts and funeral expenses.

"Second—I have no children living except an adopted daughter, Bernice Jackson, Oklahoma City, Oklahoma, and to her I give and bequeath the sum of One Dollar ($1.00).

"Third—The East 91.15 feet of Lots One (1) and Two (2), Block Twenty-Four (24), Park Place Addition to Oklahoma City, Oklahoma County, State of Oklahoma, is my separate property; the same having been acquired by me prior to my marriage to my present beloved husband, Stewart Williams. In lieu of any statutory

rights that my husband, Stewart Williams, may have in and to any part of my estate, I give and devise to my said husband, Stewart Williams, a life estate in and to the said East 91.15 feet of Lots One (1) and Two (2), Block Twenty-Four (24), Park Place Addition to Oklahoma City, Oklahoma County, State of Oklahoma. During his life time he shall have the use of said property including the income therefrom. From the said income from said property he shall pay all taxes and assessments against said property and make payments on any incumbrances that may exist against the said property, and shall keep the property in a good state of repair. He shall have authority to manage and lease said property but shall not have power or authority to sell or otherwise dispose of the same.

"Fourth—Upon the death of the said Stewart Williams, I give, devise and bequeath the said East 91.15 feet of Lots One (1) and Two (2), Block Twenty-Four (24), and the income remaining therefrom at his death, to the following persons, in equal shares, to-wit:

Sherill Wendall Miller, 813 N. Water St., Wichita, Kansas

Harold Wadsworth Miller, 813 N. Water St., Wichita, Kansas

Ida Marie Miller, 813 N. Water St. Wichita, Kansas

Delores Jean Walters, 1050 Ohio St., Wichita, Kansas

Haskelene Houston, Prairie View, Texas

Kaylyne Jackson, 1321 NE 9th. St. Oklahoma City, Oklahoma

"Fifth—All of my personal property I give and bequeath to my husband, Stewart Williams.

"Sixth—In the event my husband, Stewart Williams, does not elect to take under and in accordance with this Last Will and Testament, but elects to take under the statutes and laws of the State of Oklahoma, then and in that event, I give and devise the balance of my estate in equal shares to the aforesaid."

This will was admitted to probate and letters testamentary were granted Stewart Williams. Thereafter, as executor, he filed petition to sell a portion (West 45 feet) of the described property, waived any homestead interest therein and alleged such sale to be necessary to pay funeral expenses, taxes and costs of administration.

An order for hearing the executor's petition was issued and objections thereto were filed in behalf of testatrix's nieces and nephews who were devisees under the will. An informal hearing was held but no order of sale was made, and the only evidence relative thereto was elicited from witnesses in the instant case, who had appeared at such hearing pursuant to notice.

February 2, 1948, Bernice Jackson filed petition for letters of administration with will annexed alleging Stewart Williams' death, and her own prior right to such appointment as a surviving child. Upon such application she was appointed and qualified as administratrix. Pursuant to order of the probate court the real property was sold. The administratrix, thereafter, filed her final account and petition for determination of heirs and distribution of the estate ($7697.71) less administration expenses. At some time during these proceedings June Williams Spencer was appointed administratrix of the estate of Stewart Williams.

Objections to distribution of the estate were filed by one Smith, alleging that Stewart Williams had not elected to take under the will during his lifetime, but had elected to take under the law of succession, and thereby succeeded to an undivided half interest in the West 45 feet of the property; that he had sold this half interest to the objector (Smith) for $1250, and executed a deed therefor, and thus the proceeds in the administratrix's hands, accruing from sale of the property, constituted a trust fund for the objector's benefit. After a hearing the probate court found Stewart Williams had made no election during his lifetime, and therefore his

estate was entitled to participate in Jennie Williams estate under the laws of succession. A decree of distribution was entered setting over one half of the estate to the estate of Stewart Williams, and distributing the remaining one half in accordance with terms of the will.

The parents (natural guardians) of the minor devisees appealed to the district court where the case was tried de novo. Determination of the case involved a question of fact as to whether, during his lifetime, Stewart Williams elected to take under the will or by the law of descent and distribution. After hearing the evidence the trial court decreed that, by reason of his acts and acceptance of benefits under the will he had elected to take thereunder.

Judgment was entered reversing the final decree and order of distribution of the probate court. The motion for new trial filed by June Williams Spencer was overruled, and she has appealed from the order overruling motion for new trial and the judgment rendered by the trial court.

█ The matters relied upon for reversal of this judgment are presented under two propositions. It is contended first the evidence shows that during his lifetime Stewart Williams affirmatively elected not to take under the will, but to take under the law of descent and distribution. This contention, and the supporting argument, involves a question of fact and necessarily require examination of the record evidence. Plaintiff in error points out that as surviving spouse under the will Stewart Williams only received a life estate in the property whereas, under the law of succession, he would have been entitled to one half of the entire estate.

Plaintiff in error relies upon the following rule announced in syllabus 2 of Fox, Ex'x., v. Fox, 117 Okl. 46, 245 P. 641:

"No general rule can be formulated defining what acts of acceptance or acquiescence will constitute an 'election' between a devise in a will and a right inconsistent with the will, but there must be an intention to make an 'election,' or some decisive act, that will prevent restoring the parties affected to the same situation as if such acts had not been performed."

Upon this basis it is urged that the evidence reveals decisive, unequivocal acts upon the part of Stewart Williams evidencing his intention to take under the statute. The evidentiary facts relied upon as unequivocally establishing his election are that he purportedly sold an undivided half interest in his property to Smith, received payment therefor and thereafter collected no rent from the property, filed the will for probate, and applied to the probate court for an order to sell the portion of the property for which he had signed a deed. It is claimed that the agreement to sell to Smith was a decisive act evincing an intention to take under the statute, rather than under the will, since if he took under the statute he succeeded immediately to a half interest which he could convey away.

This record reflects that, following testatrix' death and during the period of his administration, Stewart Williams occupied the premises, collected the rents therefrom, sold or otherwise disposed of some articles of furniture, and encumbered the remainder with a mortgage which was unpaid at his death. Although administering upon the estate for nearly two years he neither closed the estate, nor rendered any accounting of his administration. Neither did he pay the taxes or discharge incumbrances as he was charged to do under the terms of the will.

In behalf of defendants in error three witnesses testified they attended the hearing in the county court in response to notice of the hearing on Williams' petition to sell the real estate. They were in accord in their testimony that he voluntarily withdrew the petition, and stated in open court that he was going to let the will stand and carry it out as his wife had wished. One of these witnesses, testatrix' brother, thereafter paid up the delinquent taxes on the property in order to protect the property for the minor devisees. The witnesses also testified that on different occasions Williams stated he had the use of the property for his life and the rents

therefrom would take care of him so that he was satisfied and would let the will stand and not take advantage of the minor children.

One witness (Parker) had purchased other property from testatrix prior to her death. On several occasions he discussed the will with Williams, who told this witness he was satisfied with the will and was going to abide thereby since he would have the property for his lifetime and then it would go to the children.

Another disinterested witness (Mitchell) had lived in the house with Williams subsequent to testatrix' death. He testified to having talked with Williams about the will on several occasions, and was advised of Williams' intention to let the property go as his wife had intended, since he would have use thereof as long as he lived.

The testimony relative to Williams' statement to the county judge that he intended to accept the provisions of the will, as well as similar statements on other occasions, was corroborated by Bernice Jackson, the administratrix.

The evidence relative to the purported sale of the property reflects that an attorney first prepared a conveyance for the entire property upon representation Williams was the sole heir. Thereafter Williams and Smith, the proposed purchaser, had the attorney prepare another deed covering the half interest, the deed naming the purchaser's mother as grantee. This deed was never acknowledged nor filed of record. The failure to have same acknowledged was explained in that the attorney was instructed to do this but there was no notary in the attorney's office. The deed was held in the attorney's files because Smith had not paid the full purchase price. The attorney testified Williams said nothing about letting the property go according to the will. However, he testified that upon being advised of his right to collect and use the rents by reason of the homestead interest Williams stated he did not care to sell the property and thereafter never returned to his office although the attorney called him several times. He also advised Williams several times he should file a written election but this was not done.

The record does not disclose execution of a contract of sale for this property. However, numerous receipts were introduced in evidence in an effort to establish consummation of a sale of the property. The purchaser had been testatrix' tenant. The day following her death Williams signed a memorandum acknowledging receipt of money to be subtracted from a total purchase price of $2500. On December 27, 1945, he signed a receipt for $150 which stated there was a balance due of $2186 and on December 29th another receipt was signed for $450 with no explanation of the reason for such payment. Through January and February, 1946, Williams signed a series of memoranda acknowledging receipt of various amounts, ranging from $20–$100. During all this period the alleged purchaser occupied the premises as a tenant. None of these receipts indicated the purpose of the payment, other than one which stated it was "on house". The deed heretofore referred to was signed by Williams December 29, 1945, while the petition to sell the real estate was filed in November, 1946.

The general rule relative to whether a surviving spouse may be held to have elected to take under a will has been stated by this court numerous times. See Stevens v. Rogers, 180 Okl. 305, 68 P.2d 821, and cases therein cited. Also, see generally 69 C.J. Wills, § 2391, et seq.; 57 Am.Jur. Wills, § 802, et seq. Syllabus 3 of the cited case states:

"A surviving spouse may be held to have elected to take under the will, rather than by succession, where his conduct shows an acceptance and acquiescence in the will, and an intention to make an election. Under the facts herein plaintiff is bound by his conduct to take under the will."

Careful consideration of this record impels the conclusion that the evidence amply sustains the findings and judgment of the trial court that, during his lifetime Stewart Williams made his election to take un-

der the will. In view of this conclusion it is unnecessary to consider other matters presented in plaintiff in error's argument.

Judgment affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and DAVISON, ARNOLD and O'NEAL, JJ., concur.